The material facts of the case were that G. Mullenex was seized of the tract of 416 acres in fee, and in 1810 contracted to sell it to Jesse Nixon, who entered and paid the purchase money, except the sum of $40, but never took a conveyance. In 1815 Stephen Henly and Andrew Belfour, who were the uncles of Jesse Nixon, and, as sureties, had paid large sums of money for him, paid that residue of the purchase (444) money to Mullenex, and he then executed the deed or instrument hereinafter mentioned, bearing date 12 June, 1815. It begins thus: "This indenture, made this, etc., between G. Mullenex, of the county of Randolph, etc., of the one part, and Stephen Henly and Andrew Belfour, both of said county, of the other part, witnesseth, that the said G. Mullenex, for and in consideration of the sum of $365, to him in hand paidby the said Stephen Henly and Andrew Belfour, the receipt, etc., hath granted, bargained and sold, and doth grant, bargain and sell unto the saidStephen Henly's and Andrew Belfour's heirs and assigns forever," the tract of land in question; and it then proceeds, "to have and to hold the same, with the appurtenances, unto the said Stephen Henly's and Andrew Belfour'sheirs and assigns, to the proper use and behoof of the said Stephen Henly'sand Andrew Belfour's heirs and assigns forever."
At that time Jesse Nixon was living on the land, but having become insolvent, left it in October, 1815, and removed to South Carolina, and has ever since resided there. He afterwards executed to Stephen Henly and Andrew Belfour a deed for the 100-acre tract adjoining the other tract of 416 acres.
When Jesse Nixon left the land Henly and Belfour entered and leased it, and received rent until the death of Henly, which happened in 1820, after which Belfour and the heirs of Henly made leases until the death of Belfour, which happened in 1825. The heirs of Henly and the heirs of Belfour respectively (who are the lessors of the plaintiff) then claimed the land by descent, and leased the same to Jacob Davis, the original defendant in this action, as a tenant from year to year, and he entered under them and continued in possession until this suit was brought against him in May, 1837. On 9 October, 1829, Jesse Nixon entered upon the tract of 416 acres, and there made and delivered a lease for a term of years to Thomas Davis, a son of Jacob, then living with his father on the land; and on 16 October, 1829, Jesse Nixon executed to Zachariah Nixon a deed of bargain and sale in fee for the same land. After this, Jacob Davis, did not pay rent to the lessors of (445) the plaintiff, nor was rent paid by him, or his son Thomas, to any person, except for the year 1833 or 1834, when it was then paid by the two to Zachariah Nixon, and Thomas then went off the land. *Page 350 
Upon the service of the declaration on him Jacob Davis, the tenant in possession, appeared, entered into the common rule, and pleaded not guilty. At the same term Zachariah Nixon came in, and, by leave of the Court made himself a defendant also.
Upon the trial it was contended, on behalf of the defendants, that the deed from Mullenex was not to Henly and Belfour, but to their heirs, and was, therefore, void, as Henly and Belfour were both living at the time of its execution. And also that it was void because it was executed by Mullenex when he was out of possession of the land and Jesse Nixon was in possession.
His Honor instructed the jury that the deed was, upon a just construction, a sufficient bargain and sale to Stephen Henly and Andrew Belfour, and that upon their several deaths the land descended from them to the lessors of the plaintiff, provided it was not void on the other ground mentioned. And upon that his Honor further instructed the jury that the deed was void if, at the time of its execution, Jesse Nixon was in the actual possession of the land and claimed it adversely to Mullenex. But that if, in their opinion, that deed was made at the instance or by the consent of said Nixon, in satisfaction of the debts which he owed his uncles, then his possession ought not to be considered adverse, and the deed was valid.
And the jury was further instructed that as Jacob Davis was the tenant of the lessors of the plaintiff he could not deny their title.
And the jury was further instructed that as Jesse Nixon had no title to the land and as Jacob Davis was at the time living on it as the tenant of the lessors of the plaintiff, the entry of the said Nixon to make the lease to Thomas Davis, on 9 October, 1829, did not change the possession of the land, so as to enable him, Jesse Nixon, to convey to the (446) defendant, Zachariah Nixon, on 16 October, 1829, and also, that the deed last mentioned could not, for that reason, operate as color of title.
There was a verdict and judgment for the lessors of the plaintiff and the defendant appealed.
Whatever doubts may be raised upon some of the questions found in the record, the justice of the plaintiff's case is so apparent that it is gratifying to find that there are other points on which the law is clearly in his favor, and which are decisive of the cause. *Page 351 
In the opinion of the Court it is not competent to these defendants to dispute, in this action, the title of the lessors of the plaintiff, upon any of the grounds taken at the trial by them. If that be so, all the other points may be dismissed from our consideration, without decision or further observation. That the defendants are concluded in the present suit we entertain no doubt.
Jacob Davis was, originally, the sole defendant in the action. It is stated that he entered into the land under a lease from the lessors of the plaintiff, in 1826, and occupied expressly as their tenant through the years 1826, 1827, 1828, and 1829. No disclaimer by him, at any time, is anywhere stated, nor any fact from which it could be inferred that his possession became adverse to the lessors of the plaintiff. It must, indeed, be assumed that either the lessors of the plaintiff had refused to renew the lease and given their tenant notice to quit, or that he denied their title before their suit was brought, because something of the sort was requisite to turn him into a trespasser so as to sustain this action. The assumption is necessarily made from the omission of this defendant to resist the recovery for the cause that his term still continued. But the period at which the relation between those parties was severed cannot, without evidence, be carried further back than the end of the year preceding the suit. Let it be said that the payment of rent to Z. Nixon, in 1834, was the joint act of Jacob and Thomas Davis, and constituted both of them tenants to the person to whom they paid the (447) rent. Yet, that would be only between those parties themselves, and could not prevent the lessors of the plaintiff demanding from Jacob Davis the possession he derived from them. It is not now a question how far a very long possession, after payment of rent or other acknowledgments of the tenancy, accompanied by a claim of title either for the tenant or some other person, may constitute evidence of a disclaimer, and give to such possession the character of adverseness, and call into action the statute of limitations. In this case nothing of the kind exists. The interval between the payment of rent to Z. Nixon and the commencement of this suit was but little more than two years, and would have amounted to nothing had the lessors of the plaintiff known of such payment, of which there is no evidence.
The action, therefore, as brought, was nothing more than the common one by a landlord at the end of the term against an unfaithful tenant, who holds over. Authorities need not to be cited to sustain his Honor's position that he cannot deny his lessor's title.
With quite as good, if not for the same, reason must the other defendant, Z. Nixon, be precluded from setting up such a defense. The action was not brought against him, nor intended to draw into question his title or affects his rights. Indeed, it could not be brought against him, *Page 352 
because he was not in possession. The possession was in Jacob Davis, and the object of the suit was to recover it from him. If another be admitted to defend, what is he to defend; what may he allege in defense? He is allowed to defend the possession of the tenant, for that is the matter in contest. He is allowed to do so because he alleges an interest in that possession, and because he may be able to make fuller defense than the tenant would make. It is possible the tenant, through ignorance or negligence, would not make all he might of his case. Therefore, one claiming to be his landlord, is permitted to set up any defense which the tenant might have brought forward. But it is neither within the purposes of justice or the dictates of reason to permit him to come in and set up a defense which the tenant could not. This subsidiary party stands with or in the place of the tenant, and is entitled to his (448) rights, and subject to his disadvantages. Hence, we held in Carson v. Burnett, 1 Dev. and Bat., 560, that the landlord cannot be charged in this action for his own trespasses, but only in respect of the land in the possession of the tenant, the original defendant. So, on the other hand, it has been decided, that only such defense was open to the landlord as was open to the tenant in possession. The case of Doe ex dem.Knight v. Smythe, 4 Ma. and Selw., 347, so rules, and is directly in point with our case. There, one entered into possession under an agreement for a term of years, paid rent, and then disclaimed. The term having expired the lessor brought ejectment against the lessee, who did not appear, but another person claimed to defend as his landlord, and did appear and defend in his stead. The Court held that this person could not set up any title to himself in that action, for since the tenant could not dispute the plaintiff's title, neither could one, claiming in privity to him and defending in his stead, do so.
PER CURIAM. Judgment affirmed.
Cited: Whissenhunt v. Jones, 80 N.C. 349; Wise v. Wheeler, 28 N.C. 199;McDowell v. Love, 30 N.C. 504; Foust v. Trice, 53 N.C. 493; Islerv. Foy, 66 N.C. 550; Wiggins v. Reddick, 33 N.C. 381; Davis v. Evans,27 N.C. 531; Gilliam v. Moore, 44 N.C. 97; Maddrey v. Long, 86 N.C. 385. *Page 353 
(449)